**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE FOSTER *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Civil Case No. 1:25-cv-09735 |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S
<u>MOTION TO DISMISS & MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

    A.    The Product Packages. ............................................................................................ 2

    B.    Research Addressing Lead in Tampons. ................................................................ 3

    C.    The FDA's Examination of Metal Exposure Through Tampons............................ 3

    D.    Plaintiff's Complaint. ............................................................................................. 4

    E.    Related Litigation. .................................................................................................. 5

PROCEDURAL STANDARD .......................................................................................................... 5

ARGUMENT ..................................................................................................................................... 6

I.    Plaintiff Fails to Plausibly Allege That the Tampons She Purchased Contain Lead in Amounts That "Pose[] a Potential Health Risk." ............................................................. 6

    A.    Plaintiff Has Not Plausibly Alleged That the Products She Purchased Contain Lead. ........................................................................................................ 6

    B.    Plaintiff Has Not Plausibly Alleged That Any Lead Is Present at a Level That "Poses a Potential Health Risk." .................................................................... 8

II.    Plaintiff Fails to Plead an Actionable Misrepresentation or Omission. .............................. 9

    A.    Plaintiff Fails to Plead a Plausible Misrepresentation Theory. .............................. 9

    B.    Plaintiff Fails to Plead a Plausible Omission Claim. ........................................... 12

III.    Plaintiff's Claims Suffer from Additional Pleading Defects. ........................................... 13

    A.    The "Multi-State" Claim Fails to Comply with Federal Pleading Requirements. ....................................................................................................... 13

    B.    Plaintiff's Common-Law Claims Fail. ................................................................ 14

IV.    Plaintiff Lacks Standing to Pursue Injunctive Relief. ...................................................... 15

## INTRODUCTION

Plaintiff Stephanie Foster filed this putative class action alleging that she purchased Tampax tampons and later learned—based on third-party testing commissioned by her attorneys—that they purportedly contain trace levels of lead. Plaintiff does not allege that the tampons caused her any physical injury or that the trace levels of lead alleged actually pose a health risk. Instead, Plaintiff seeks to recover economic damages based on her contention that The Procter & Gamble Company ("P&G") misleadingly advertises the tampons. But the Complaint falls well short of stating a viable false-advertising theory, and it should be dismissed for multiple reasons.

*First*, all of Plaintiff's claims rest on the premise that the tampons she purchased contained lead at a level that posed a potential health risk. Plaintiff has failed to allege sufficient facts, however, to make that plausible. She does not claim that the tampons she purchased were ever tested. Instead, she relies on third-party testing of unidentified "homogenous samples" of tampons with no alleged geographic or temporal connection to her purchases. And even if that testing could somehow be extrapolated to the products purchased by Plaintiff, she still pleads no facts showing that the trace levels of lead alleged here pose any health risk. Instead, the Complaint relies on Plaintiff's subjective belief that the levels are "substantial," but that is insufficient to support Plaintiff's theory of standing and liability.

*Second*, Plaintiff does not advance any viable theory of misrepresentation. Plaintiff points to a hodgepodge of representations on the tampons' packaging that have nothing to do with lead. But no reasonable consumer would be misled by these representations, which include statements like "Free of Perfume" and "Free of Dyes." Nor does Plaintiff plausibly allege that P&G owed her any duty to disclose as required for her omission claim.

*Finally*, even if Plaintiff had articulated a plausible theory of injury, Plaintiff's claims run into multiple fatal pleading barriers.

1

For these and the additional reasons below, the Court should dismiss the Complaint.

## BACKGROUND

**A.     The Product Packages.**

P&G manufactures several different tampon product lines, including Tampax Pearl and Tampax Radiant. Each product line also includes tampons in different sizes. *See* Compl. ¶ 3 n.1.

 

The side panels of the Tampax Pearl and Tampax Radiant boxes state that the tampons are "Free of Perfume," "Free of Dyes," "Free of Elemental Chlorine Bleaching," and "Clinically Tested Gentle to Skin," and note that the tampons are the "#1 U.S. Gynecologist Recommended Tampon Brand." *Id.* ¶¶ 25, 26.

 

There are no representations about lead or any other heavy metals on the boxes. Nor does the packaging include representations regarding any other ingredients in the tampons apart from the specific references to "perfumes," "elemental chorine bleach[]," and "dyes." *See id.* And, contrary to the Complaint's suggestion, the tampon boxes do not state that the products are free of "harmful elements and ingredients." *See, e.g.*, *id.* ¶¶ 27, 100.

### B. Research Addressing Lead in Tampons.

Lead is a naturally occurring metal that is "abundantly distributed" and "used all over the world." *See* Decl. Ex. A at 55, 62 (cited by Compl. ¶ 74 n.5). According to sources cited in the Complaint, it is a "common environmental pollutant" that can be found in "the air, household dust, soil, water, and commercial products." *Id.* at 58.

Plaintiff's Complaint follows a June 2024 study that tested tampons as a potential source of exposure to heavy metals, including lead. *See* Decl. Ex. B (cited by Compl. 76 n.6) ("June 2024 Study"). The study found "measurable concentrations" of lead, among other metals, in all 14 of the unidentified tampon brands that they tested, but specifically declined to draw any conclusions about health risks. *See id.* at 1. The authors emphasized the study's statistical limitations and explained that "[f]uture research is necessary . . . [to] determine whether metals can leach out of tampons and cross the vaginal epithelium into systemic circulation." *Id.* at 7–8.

### C. The FDA's Examination of Metal Exposure Through Tampons.

In response to concerns following the June 2024 Study, the FDA launched an investigation into the issue of heavy metals in tampons, which the FDA regulates as Class II medical devices. *See* 21 C.F.R. §§ 884.5460, 884.5470; *see also* Decl. Ex. C.[1] The FDA commissioned an

---

[1] Materials from the FDA are subject to judicial notice. *See Vincent v. Medtronic, Inc.*, 221 F. Supp. 3d 1005, 1007 (N.D. Ill. 2016) ("Executive and agency determinations are subject to judicial notice and may be considered even if not mentioned in the complaint."); *see also Gubala* (continued…)

independent literature review and initiated a laboratory study to evaluate whether metals in tampons are capable of leaching from the tampons and being absorbed by the body. *See* Decl. Ex. C. In December 2024, the FDA announced that its literature review "did not identify safety concerns associated with tampon use and contaminant exposure." Decl. Ex. D at 1. The FDA noted that existing studies do not address "how much, if any, of the contaminants identified are released from the tampon or absorbed through the vagina." *Id.*; *see also* Decl. Ex. E (literature review). The laboratory study remains underway, but the FDA confirmed that it "continues to recommend FDA-cleared tampons," which include the P&G tampons at issue here, "as a safe option for use as a menstrual product." *Id.*

### D. Plaintiff's Complaint.

Notwithstanding the FDA's guidance that tampons remain safe, Plaintiff filed this putative class action alleging that P&G misled her to believe that the tampons were "free from potentially harmful ingredients or elements (such as lead)." Compl. ¶ 27. She bases her claims on the unrelated statements on Tampax's side panel, *id.* ¶¶ 4–5, and on P&G's alleged failure to disclose that the tampons contain a "substantial amount of lead," *id.* ¶¶ 6–7. But Plaintiff does not allege that she tested the tampons she purchased, nor does she plead facts to suggest that the commissioned third-party testing involved the same lot of tampons or had any temporal or geographic connection to Plaintiff's purchase of tampons. The Complaint also does not identify any threshold level at which lead in tampons may pose a health risk.

Relying on these allegations, Plaintiff asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") on behalf of a putative class of Illinois consumers.

---

*v. CVS Pharmacy, Inc.*, 2016 WL 1019794, at *6 & n.10 (N.D. Ill. Mar. 15, 2016) ("The Court can take judicial notice of the FDA Food Labeling Guide because it is available on a government agency website.").

Compl. ¶¶ 109, 124–141.  In a single, undifferentiated count, Plaintiff also purports to invoke the consumer protection statutes of consumers who "purchased the Defendant's Products for personal use" in the District of Columbia, Florida, Illinois, Massachusetts, Michigan, and Minnesota on behalf of a "Multi-State Consumer Protection Class." *Id.* ¶¶ 109, 151–162.  Finally, she brings claims for negligent misrepresentation and unjust enrichment on behalf of herself and a putative nationwide class (or, in the alternative, a putative Illinois subclass), *see id.* ¶¶ 109, 163–174, though she does not specify which state's laws govern those claims.

   E.   **Related Litigation.**

This case is one of four lawsuits filed by Plaintiff's counsel following the June 2024 study, and the second one to target P&G.[2]  In *Barton v. P&G*, 766 F. Supp. 3d 1045, 1065 (S.D. Cal. 2025), Judge Curiel held that plaintiffs' omission claim was firmly foreclosed by plaintiffs' failure to allege an unreasonable safety hazard.  Plaintiffs then amended the complaint, and the court permitted affirmative misrepresentation claims under California law to proceed.  But the court recognized that its decision was an outlier: the court "acknowledge[d] that such allegations have been held to be insufficient for some courts evaluating misrepresentation claims that involve heavy metals in products."  2025 WL 2307686, at *6 (S.D. Cal. Aug. 8, 2025) (collecting cases).  *Barton* was wrongly decided in allowing *any* claim to survive, but in any event, controlling Seventh Circuit and Illinois law compels a different result here.

## PROCEDURAL STANDARD

A complaint must "state[] a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Mere "unadorned, the-

---

[2] P&G has separately moved to transfer both this case and the related *Barton v. P&G* case to the Southern District of Ohio, where P&G is headquartered, to promote efficient coordination of further proceedings, if necessary, with the *Barton* action.

5

defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Id.* at 678. Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, because all of Plaintiff's claims "sound in fraud," she must satisfy the heightened pleading requirements of Rule 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (claims "premised upon a course of fraudulent conduct," including ICFA claims, implicate Rule 9(b)).

## ARGUMENT

**I.     Plaintiff Fails to Plausibly Allege That the Tampons She Purchased Contain Lead in Amounts That "Pose[] a Potential Health Risk."**

All of Plaintiff's claims rest on a core theory that the challenged statements are deceptive because the tampons contain lead at levels that "pose[] a potential health risk." Compl. ¶ 62. To have Article III standing to assert this claim, Plaintiff must allege an "injury in fact" that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,'" such that it "affect[s] the plaintiff in a personal and individual way." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024). In the context of this case, that means Plaintiff must allege sufficient facts to make it plausible that the products she allegedly purchased actually contain lead at levels that pose a potential health risk. She has not done so.

**A.     Plaintiff Has Not Plausibly Alleged That the Products She Purchased Contain Lead.**

Plaintiff does not allege that she tested the tampons she actually purchased. Instead, she relies on commissioned third-party testing of unspecified "homogenous samples" to assert that *all* Tampax Pearl and Radiant tampons contain a "substantial amount" of lead. *See* Compl. ¶¶ 42, 60–61. Missing from the Complaint, however, are any facts to support an inference that this testing can be extrapolated to the tampons purchased by *Plaintiff*. That defect is fatal to both standing

6

and liability given that Plaintiff's claimed injury is that she spent money she "otherwise would not have spent if [she] had known that the Product contain lead," *id.* ¶¶ 38, 39. *See Abbott Infant Formula*, 97 F.4th at 529–30 (dismissing claims because "a 'potential risk' the products may have been contaminated" cannot establish standing).

Plaintiff does not allege, for example, that she purchased a product from the same lot as the third-party tested samples, or even from the same year—in fact, Plaintiff does not specify when she purchased the tampons. *See* Compl. ¶ 92 (alleging only that she purchased the tampons "numerous times" during the putative class period). Nor does she allege when and where the tested samples were purchased, whether more than a single lot was tested, or whether results were consistent across the June 2024 and February 2025 testing. *See id.* ¶¶ 41–50. There are likewise no plausible allegations to support that lead—a naturally occurring contaminant—is uniformly present in the tampons. *See Abbott Infant Formula*, 97 F.4th at 530 (distinguishing contamination claims from cases involving a "universal defect"). To the contrary, the alleged lead levels vary significantly across product lines, suggesting that any contamination is lot-specific. *See* Compl. ¶ 60 (identifying differences in lead levels across same sizes of Pearl and Radiant tampons); *id.* ¶ 68 (identifying no detectable lead in L. brand tampons).

Courts in this District regularly decline to extrapolate limited testing of a product to *every* product in a line. For example, in *Nelson v. John Paul Mitchell Systems*, 2024 WL 4265198, at *3 (N.D. Ill. Sept. 23, 2024), the court dismissed claims based on benzene contamination because "absent allegations that the Product they purchased was from one of the tested lots, these allegations are not particularized to show that Plaintiffs suffered more than an abstract risk of similar financial injury." Similarly, in *Hirsch v. L'Oreal USA, Inc.*, 2025 WL 1540857, at *3 n.8 (N.D. Ill. May 29, 2025), the court rejected plaintiff's invitation to leap from the allegation that

7

"testing showed benzene contamination for specific lots" to the conclusion that "most lots were contaminated," since that would "effectively invert the plaintiff's burden of proof." *See also e.g.*, *Hicks v. L'Oreal U.S.A., Inc.*, 2024 WL 4252498, at *10 (S.D.N.Y. Sept. 19, 2024) (explaining courts consider factors including "temporal" and "geographic proximity" in determining whether a "meaningful link exists between the results of testing and a plaintiff's actual purchases"); *Fahey ex rel. D.C. v. Deoleo USA, Inc.*, 2018 WL 5840664, at *2 (D.D.C. Nov. 8, 2018) (rejecting reliance on product testing from a different lot, time period, and location).

Like the plaintiffs above, Plaintiff here fails to plausibly allege a "*particularized* harm" sufficient to support standing because the complaint's allegations do not support an inference that *her* tampons contained lead. *Hirsch*, 2025 WL 1540857, at *5. And for this same reason, Plaintiff's claims fail on the merits because she does not plausibly identify any defect in the tampons. *See Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 750 (N.D. Ill. 2023) ("The existence of a defect is key," as representations are "not false or misleading unless the product was defective.").

### B. Plaintiff Has Not Plausibly Alleged That Any Lead Is Present at a Level That "Poses a Potential Health Risk."

Even had Plaintiff adequately alleged the presence of lead, she has not established that the amount allegedly detected "poses a potential health risk," as her theory of standing and liability requires. *See* Compl. ¶¶ 60, 62. That is because none of the sources cited by Plaintiff establishes a plausible standard for determining what level of lead would be dangerous or unsafe in a tampon.

Plaintiff repeatedly asserts that the allegedly detected amounts of lead are "substantial," but fails to identify any benchmark or threshold to support that allegation. *See, e.g.*, *id.* ¶ 7. This failure to connect the trace lead in the tampons to any material safety risk is fatal to Plaintiff's claims. For example, in *Tepper v. Quaker Oats Co.*, 2025 WL 843710 (N.D. Ill. Mar. 18, 2025),

8

the court dismissed false advertising claims for lack of standing where plaintiff did not connect the pesticide levels in the challenged product to any recognized safety threshold. *Id.* at *3 (agreeing that plaintiff's "subjective belief" that the levels were "dangerous" was insufficient). In *In re Hain Celestial Heavy Metals Baby Food Litigation*, another federal court dismissed lead contamination claims for this same reason, explaining, "without plausibly alleging what concentration of various heavy metals in baby food products would actually be unsafe . . . Plaintiffs have failed to allege why the levels of these naturally-occurring heavy metals . . . would be material to the reasonable consumer." 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024); *see also Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) ("Plaintiff must specifically allege that [lead] at the level present in [the product] makes [the representations] false or misleading.").

Plaintiff's failure to establish any material health risk is especially stark here, where it is unclear whether lead is even capable of leaching from tampons—let alone entering the bloodstream. *See supra* 3–4. Indeed, the FDA has investigated this precise issue and concluded that tampons remain safe. *Id.*; *see also Tepper*, 2025 WL 843710, at *4 (finding safety concern "hypothetical" where contaminant levels fell below EPA and FDA safety levels); *see also Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) ("[Plaintiff's] argument that she was misled into purchasing unsafe lipstick products is belied by the FDA's report finding that the lead levels in the Defendants' lipsticks were not dangerous[.]").

In short, Plaintiff has failed to show there is *any* lead in the tampons she purchased, much less levels that pose health concerns. All her claims should be dismissed as a result.

## II. Plaintiff Fails to Plead an Actionable Misrepresentation or Omission.

### A. Plaintiff Fails to Plead a Plausible Misrepresentation Theory.

Plaintiff's affirmative misrepresentation claims separately fail because no reasonable consumer would believe that the challenged statements relate to lead. To survive a motion to

9

dismiss in a false advertising case, a plaintiff must do more than allege that "a label might conceivably be misunderstood by some few consumers." *Beardsall v. CVS Pharmacy, Inc.*, 2019 WL 1168103, at *3 (N.D. Ill. Mar. 13, 2019) *aff'd*, 953 F.3d 969 (7th Cir. 2020). Instead, the "reasonable consumer" standard "requires a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled." *Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023).

Plaintiffs' theory of misrepresentation is that a reasonable consumer would interpret the various statements as conveying that "the Products are free from potentially harmful ingredients or elements (such as lead)," Compl. ¶ 27, when in fact the Products contain lead in an amount that "poses a potential health risk," *id.* ¶ 62. But none of the challenged representations say what Plaintiff alleges them to mean, and courts reject challenges to "factually accurate statement[s]" based on conclusory allegations that "unspecified 'consumers' agree with [plaintiffs'] subjective interpretation of the label." *Cristia v. Trader Joe's Co.*, 2022 WL 17551552, at *5 (N.D. Ill. Dec. 9, 2022). The Court should reject Plaintiff's attempt to infuse the challenged representations, each of which is discussed below,[3] with implied meanings that go far beyond their plain language.

**"FREE OF PERFUME," "FREE OF ELEMENTAL CHLORINE BLEACHING," "TAMPON FREE OF DYES."** Plaintiff does not dispute that these factual representations are true—the tampons are free of perfume, elemental chlorine bleach, and dyes, which are the only specific ingredients referenced in the challenged representations. Nor does Plaintiff plead any facts explaining why consumers would associate these ingredients with lead. Absent allegations establishing a plausible association, courts refuse to implausibly extrapolate from true, discrete

---

[3] Plaintiff also cites language from P&G's website, *see* Compl. ¶ 168, but she does not purport to have ever visited, let alone relied upon, P&G's website.

10

ingredient claims to other ingredients or contaminants. *See, e.g.*, *Stuve v. Kraft Heinz Co.*, 2023 WL 184235, at *10 (N.D. Ill. Jan. 12, 2023) ("NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes" not misleading despite alleged presence of phthalates); *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 872 (N.D. Ill. 2024) (no reasonable consumer would believe spring water was free of microplastic contaminants based on "100% spring water" representation); *see also Callahan v. P&G*, 2024 WL 2892838, at *3 (N.D. Ill. June 10, 2024) (Daniel, J.) (dismissing false advertisement claim where challenged "32 loads" representation was "literally true" and plaintiff "offer[ed] no basis to infer that customers think a 'load' of laundry means a large or full load").

**"CLINICALLY TESTED GENTLE TO SKIN."** Plaintiff similarly fails to allege any connection between the "gentle to skin" representation and lead. In fact, not one of the alleged harmful effects of lead identified in the Complaint even relates to skin. *See, e.g.*, Compl. ¶ 83. At best, Plaintiff seeks to imply that "gentle" is a good quality, and the presence of lead is a bad quality. But that is not enough, since the "alleged presence of a negative substance" should not "prohibit a manufacturer from advertising a product's positive qualities." *See Stuve*, 2023 WL 184235*, at *10; *see also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) (rejecting argument that "no refined sugar" implies "no sugars that had been even partially refined").

**"#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND."** There are no allegations that this statement—which the packaging confirms is "based on 2020 survey"—is false. *See* Compl. ¶ 25. To the extent the SAC's theory is that gynecologists would not recommend tampons that are "harmful," that theory fails because Plaintiffs have not plausibly alleged that the tampons are unsafe. *See supra* 8–9; *see also Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 214

(N.D.N.Y. 2024) (dismissing false advertising claim about added sugar based on true representation that product was the "#1 Doctor Recommended Brand").

Because Plaintiff pleads no facts to support that reasonable consumers believe the narrow and specific challenged statements—which have nothing to do with lead—mean the tampons are free of the trace amounts of lead alleged here, her misrepresentation claims should be dismissed.

### B. Plaintiff Fails to Plead a Plausible Omission Claim.

Implicitly conceding that none of the challenged representations support a plausible theory of deception, Plaintiff also alleges that P&G has omitted "material facts" about the alleged presence of lead in the Products. Compl. ¶ 170. To state a fraudulent omission claim "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017). A duty to disclose "may be based on a fiduciary relationship or a relationship of trust and confidence where defendant is in a position of influence and superiority over plaintiff" or "may arise when a defendant tells a half-truth and then becomes obligated to tell the full truth." *Id.*

Neither of these categories applies here. For the reasons explained above, Plaintiff fails to allege any misrepresentation or partial misrepresentation that could give rise to a duty to disclose. *See supra* 9–12. And Plaintiff's allegations fall short of clearing Illinois law's high bar for establishing "a relationship of trust and confidence." *See Toulon*, 877 F.3d at 738 ("State and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one."). Courts refuse to imply a "fiduciary or confidential relationship" merely from a defendant's marketing and sale of products. *See, e.g.*, *Williams v. Mielle Organics, LLC*, 2025 WL 2734578, at *4 (N.D. Ill. Sept. 25, 2025) (no duty to disclose based on allegation that defendant "had a duty to ensure its Products did not contain ingredients that would cause hair

12

loss and other injuries"); *Barton*, 766 F. Supp. 3d at 1066 (dismissing claims based on same theory of harm for failure to plausibly allege a duty to disclose).

### III. Plaintiff's Claims Suffer from Additional Pleading Defects.

#### A. The "Multi-State" Claim Fails to Comply with Federal Pleading Requirements.

The multi-state claim does not satisfy even the basic pleading standards set forth in Rules 8 and 10—let alone Rule 9(b)'s heightened pleading standard, which governs Plaintiff's claims here. A complaint that asserts multiple causes of action in a single count violates federal pleading rules,[4] and here Plaintiff purports to assert claims under the laws of six states, without pleading any of the elements of these respective statutes. That is insufficient. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013) (affirming dismissal of claim asserting multiple causes of action in a single count because it "strikes us as exactly the type of 'kitchen sink approach to pleading' that we have previously found to violate the Federal Rules").

Plaintiff also cannot assert a claim under the laws of any state other than Illinois, which is where Plaintiff resides and the only state in which she alleges to have purchased the product. Absent a connection or nexus to other states, Plaintiff cannot bring a claim under the consumer protection statutes of those states because Plaintiff is "not within the class intended to be protected by" them. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *2–3 (N.D. Ill. June 1, 2022) (dismissing claims brought under laws of states that plaintiffs had "no connection to").

---

[4] Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) requires that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count," where doing so "would promote clarity."

### B. Plaintiff's Common-Law Claims Fail.

Plaintiff's negligent misrepresentation and unjust enrichment claims fail for multiple reasons. As an initial matter, Plaintiff fails to identify which state's common law she invokes for claims that Plaintiff purports to assert on behalf of a nationwide class. Compl. ¶¶ 163–183. Without knowing what states' laws are at issue, neither P&G nor this Court can assess whether Plaintiffs have stated a claim. *See Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 584 (N.D. Ill. 2008) (noting that elements of an unjust enrichment claim vary across states); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 821 (N.D. Ill. 2016) (same for negligent misrepresentation claims). P&G assumes for the purposes of this motion only that Plaintiff's common law claims are governed by the law of Illinois, where Plaintiff resides and was allegedly injured. *See* Compl. ¶ 14–15; *see supra* 13.

**Negligent Misrepresentation:** Plaintiff's negligent misrepresentation claim is also barred by the economic loss rule, "which prevents recovery in tort for a purely economic loss." *Kampmann v. Procter & Gamble Co.*, 699 F. Supp. 3d 678, 694 (C.D. Ill. 2023).

"The remedy for economic loss"—including "loss relating to a purchaser's disappointed expectations"—"lies in contract." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982). Because Plaintiff "alleges only economic loss (paying more for [the tampons] than she would have if she'd known their actual contents), Illinois law bars her from recovering under tort theories[.]" *Smith v. Gen. Mills Sales, Inc.*, 2023 WL 2349908, at *7 (N.D. Ill. Mar. 3, 2023). The exception for "one who is in the business of supplying information for the guidance of others in their business transactions" does not apply because, at best, Plaintiff alleges that P&G "provide[s] information ancillary to the sale of a product." *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019); *see also Kampmann*, 699 F. Supp. 3d at 694 (rejecting plaintiff's argument that this exception applied to P&G's sale of cough medicine).

**Unjust Enrichment:** Where a plaintiff's "unjust enrichment claim rests on the same improper conduct alleged in another claim, . . . unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021) ("Unjust enrichment under Illinois law 'does not constitute an independent cause of action.'"). Since Plaintiff does not assert any independent theory of unjust enrichment, *see* Compl. ¶¶ 175–183 (relying entirely on identical misrepresentation and omissions theory), her unjust enrichment claim fails alongside her deficient consumer fraud and negligent misrepresentation claims. *See Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. 2016) (dismissing unjust enrichment claim based on same allegations of deceptive advertising as other claims).

### IV. Plaintiff Lacks Standing to Pursue Injunctive Relief.

Finally, Plaintiff cannot pursue injunctive relief because she is now aware of the challenged advertising. *See* Compl. ¶ 104 (asserting that P&G "continues to sell the misbranded Products"). "Courts in this district consistently hold that plaintiffs bringing deceptive trade practice claims based on past illegal conduct do not have standing to seek injunctive relief." *Bruno v. Am. Textile Co., Inc.*, 2023 WL 6976826, at *6 (N.D. Ill. Oct. 23, 2023). Allegations that Plaintiff "would like to purchase the Products in the future if the Products did not contain lead" but "is not able to rely on the labeling" (Compl. ¶¶ 105–106) do not change this result, since such allegations are "too speculative to confer standing." *Bruno*, 2023 WL 6976826, at *6 (rejecting similar allegations regarding future purchase intent); *see also, e.g.*, *Slowinski*, 744 F. Supp. 3d at 877 (holding that even if plaintiffs intended to buy the products again, knowledge of alleged microplastics contamination defeated standing).

### CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety.

Dated: October 13, 2025              Respectfully Submitted,

/s/ *Andrew Soukup*

Andrew Soukup
asoukup@cov.com
David N. Sneed*
dsneed@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5261
*pro hac vice forthcoming*

Megan L. Rodgers
mrodgers@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
*pro hac vice forthcoming*

*Counsel for Defendant
The Procter & Gamble Co.*